UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANJANETTE DELONG, individually; RODNEY DELONG SR., individually; and RODNEY DELONG, by and through his successors-in-interest ANJANETTE DELONG and RODNEY DELONG SR., <br><br> Plaintiffs, <br><br> v. <br><br> OFFICER J. CARRILLO, individually; OFFICER F. CEA, individually; OFFICER S. VALVERDE, individually; DOES 4 to 20, in their individual capacities, <br><br> Defendants. | No. 2:20-cv-00190-TLN-DB <br><br><br> **ORDER** |

This matter is before the Court pursuant to Defendants Officer J. Carrillo ("Carrillo"), Officer F. Cea ("Cea"), and Officer S. Valverde's ("Valverde") (collectively, "Defendants") Motion to Dismiss. (ECF No. 11.) Plaintiffs Anjanette DeLong ("A. DeLong"), Rodney DeLong Sr. ("DeLong Sr."), and Rodney DeLong ("Decedent") by and through his successors-in-interest (collectively, "Plaintiffs") oppose Defendants' motion. (ECF No. 12.) Defendants have filed a reply. (ECF No. 13.) For the reasons set forth below, the Court hereby GRANTS in part and DENIES in part Defendants' Motion to Dismiss. (ECF No. 11.)

///

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are the biological parents of Decedent who allege prison officials knew he was at a substantial risk of harm during a cell-compaction process and were deliberately indifferent to the risk, resulting in Decedent's death.  (*See* ECF No. 9.)  Decedent was an inmate at High Desert State Prison ("HDSP") in Susanville, California, serving a sentence of nine years.  (*Id.* at ¶ 11.) Decedent had seven months remaining on his sentence when he died.  (*Id.*)  HDSP transferred Decedent to a new cell as part of the prison's cell-compaction process.  (*Id.* at ¶ 12.)  A prerequisite to a cell change is to process the change through the Strategic Offender Management System ("SOMS"), which the California Department of Corrections and Rehabilitation ("CDCR") uses to electronically monitor inmate files.  (*Id.* at ¶ 16.)  Correctional staff use SOMS to determine if inmates are suitable to be housed together, whether inmates may have any special needs or restrictions, and to keep track of inmate information, including gang affiliations and violent propensities.  (*Id.*)

Plaintiffs allege SOMS listed Decedent's cellmate, Robert Stockton ("Stockton"), as a member of the Aryan Brotherhood ("AB"), a race-based prison gang.  (*Id.* at ¶ 13.)  Potential AB members must commit a murder to gain full membership and are required to commit any criminal acts the enterprise asks of them.  (*Id.*)  Around October 15, 2016, Stockton murdered Doug Maynard ("Maynard"), a fellow inmate and AB target, by stabbing Maynard in his head and upper torso with a knife.  (*Id.*)  SOMS also listed Decedent as an enemy of the AB and therefore a target for the AB.  (*Id.* at ¶¶ 14–16.)  Plaintiffs allege Defendants knew Stockton had a propensity for violence and previously killed an inmate.  (*Id.* at ¶¶ 17, 19.)  Plaintiffs further allege Defendants knew SOMS listed Stockton as an AB member and Decedent as an enemy of the AB.  (*Id.* at ¶ 18.)

Defendants moved Decedent to his new cell with Stockton at approximately 12:30 p.m. on May 6, 2018.  (*Id.* at ¶ 12.)  Sometime after moving Decedent to the new cell with Stockton, Carrillo realized he and the other Defendants failed to process the cell change through SOMS. (*Id.* at ¶ 23.)  Carrillo directed other correctional staff to remove Decedent and place him in a holding cell pending further inmate compatibility review by a central board.  (*Id.*)  When

1   correctional staff reached Decedent's new cell, they found Stockton blocking the door of the cell.
2   (*Id.*)  Stockton dropped a prison-manufactured weapon out of the food port in the cell door.  (*Id.*)
3   When Stockton moved, officers could see Decedent lying in a pool of blood from his head to his
4   torso.  (*Id.*)  Decedent suffered stab wounds to his head, neck, and eyes.  (*Id.*)  Decedent was
5   pronounced dead at 1:02 p.m. on May 6, 2018, as a result of his injuries.  (*Id.*)

6   On May 2, 2019, A. DeLong submitted a Claim for Damages and Application to File a
7   "Late" Claim to CDCR pursuant to the Government Claims Act, California Government Code §§
8   810–998.3.  (*Id.* at ¶ 42.)  On August 7, 2019, the application to file a late claim was granted
9   under California Government Code § 911.6, but the underlying claim for damages was rejected
10  due to complexity.  (*Id.*)  On January 27, 2020, Plaintiffs filed an initial action in this Court.
11  (ECF No. 1.)  On June 18, 2020, Plaintiffs filed the operative Second Amended Complaint
12  ("SAC").  (ECF No. 9.)  On July 9, 2020, Defendants filed the instant Motion to Dismiss.  (ECF
13  No. 11.)  On August 3, 2020, Plaintiffs filed an opposition (ECF No. 12), and on August 10,
14  2020, Defendants filed a reply (ECF No. 13).

15  **II.     STANDARD OF LAW**

16  A motion to dismiss for failure to state a claim upon which relief can be granted under
17  Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.
18  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain
19  "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See*
20  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the
21  complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon
22  which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).
23  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment
24  motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz*
25  *v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

26  On a motion to dismiss, the factual allegations of the complaint must be accepted as true.
27  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give the plaintiff the benefit of every
28  reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

*Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading

4

could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

### III. ANALYSIS

Plaintiffs' SAC alleges three claims: (1) a 42 U.S.C. § 1983 ("§ 1983") claim for violation of Decedent's Eighth Amendment constitutional right to be free from cruel and unusual punishment; (2) violation of California Government Code § 844.6(d) and California Civil Procedure Code § 377.60 (negligence resulting in wrongful death); and (3) a § 1983 claim for violation of Plaintiffs' Fourteenth Amendment right to companionship of Decedent. (*See generally* ECF No. 9.) In their motion to dismiss, Defendants argue they are entitled to qualified immunity on the first and third claims. (ECF No. 11-1 at 6–9.) Defendants also contend these claims fail to state a claim upon which relief may be granted. (*Id.* at 4–6.) Defendants maintain DeLong Sr.'s second claim is barred for failure to present a government claim. (*Id.* at 9–10.) Defendants further request the Court decline to exercise supplemental jurisdiction over the remaining state law negligence claims, thus dismissing all claims. (*Id.* at 10.) The Court will first address Defendants' Request for Judicial Notice (ECF No. 11-2), then Defendants' claim of qualified immunity, then finally each of Defendants' arguments in turn.

#### A.   Defendants' Request for Judicial Notice

Defendants request the Court take judicial notice that the California Government Claims Program has not received a government claim from DeLong Sr. (*See* ECF No. 11-2.) Specifically, Defendants request the Court take judicial notice of Exhibit A, which is comprised of a signed declaration of Karolyn Rodriguez, A. DeLong's Claim for Damages and Application to File a "Late" Claim, and the California Department of General Services' response. (*See id.*.) Plaintiffs do not oppose Defendants' request. (*See* ECF No. 12 at 2.)

The Court may take judicial notice of facts that can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). "Some courts have taken judicial notice of [government] claims and their rejection on the ground such documents are public records recounting facts capable of ready determination by turning to sources whose accuracy cannot be questioned." *Deen v. City of Redding*, Civ. No. S-13-1569

KJM CMK, 2014 WL 1513353, at *2–3 (E.D. Cal. Apr. 11, 2014) (citing cases).  Courts have also taken judicial notice "of the fact that no claim has been filed as a matter of public record." *Scott v. U.S.*, No. CV 09-04979 MMM (Ex), 2009 WL 3060376, at *1 (C.D. Cal. Sept. 24, 2009) (citing cases).

Exhibit A contains a signed declaration of Karolyn Rodriguez — a Senior Legal Analyst with the Correctional Law Section within the Office of the Attorney General, Department of Justice — who reviewed the California Government Claims Program database and found no claim submitted by DeLong Sr.  (ECF No. 11-2 at 5.)  Exhibit A also contains the government claim form signed by A. DeLong and the letter from the California Department of General Services granting her late application but rejecting the underlying claim "because it raises complex issues that go beyond the scope of the analysis and legal interpretation typically undertaken by the [Government Claims Program]."  (*Id.* at 6–13.)  Accordingly, Defendants' Request for Judicial Notice that the California Government Claims Program has not received a government claim from DeLong Sr. is GRANTED.

### B. Qualified Immunity

Qualified immunity generally shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Mitchell v. Forsyth*, 472 U.S. 511, 517 (1985).  The determination as to whether qualified immunity applies requires a two-step test: (1) whether facts alleged, taken in the light most favorable to the injured party, show the defendants' conduct violated a constitutional right; and (2) whether the right was clearly established.  *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir.2012) (en banc).  Knowledge of a substantial risk of serious harm and disregard of that risk is a well-documented violation of Eighth Amendment constitutional rights.  *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825 (1994).

Qualified immunity is a fact-intensive determination.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  The cornerstone of the qualified immunity analysis is the reasonableness of the official's

1    conduct.  *See Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1075–76 (9th Cir. 2011) ("The

2    linchpin of qualified immunity is the reasonableness of the official's conduct."); *Anderson v.*

3    *Creighton*, 483 U.S. 635, 638–39 (1987) ("[W]hether an official protected by qualified immunity

4    may be held personally liable for an allegedly unlawful official action generally turns on the

5    objective legal reasonableness of the action, assessed in light of the legal rules that were clearly

6    established at the time it was taken." (internal quotation marks and citations omitted)).  Thus,

7    although qualified immunity should be decided at the earliest opportunity, the relevant facts must

8    be ascertainable by the Court so that it may examine the reasonableness of the state officials'

9    behavior.  *See Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001); *Clinton v. De La Cruz*,

10   No. CV 08–4181–DOC (OP), 2012 WL 1247142, at *7 (C.D. Cal. Mar. 7, 2012).

11        Defendants rely on *Estate of Ford v. Ramirez-Palmer* to argue that they are entitled to

12   qualified immunity.  (*See generally* ECF No. 11-1 at 8–9 (citing 301 F.3d 1043 (9th Cir. 2002)).)

13   In *Estate of Ford*, the Ninth Circuit reversed the district court's denial of summary judgment for

14   defendants on their defense of qualified immunity because the district court stopped short of

15   considering "whether — assuming the facts in the injured party's favor — it would be clear to a

16   reasonable officer that his conduct was unlawful."  301 F.3d at 1045.  Plaintiff Ford was an

17   inmate who was killed by his cellmate Diesso.  *Id.* at 1045.  Ford's family and estate filed a §

18   1983 suit against the State of California and a number of prison officials arguing Ford's right to

19   be free from cruel and unusual punishment under the Eighth Amendment had been violated.  *Id.*

20   at 1048.  The court noted "the official must be both aware of facts from which the inference could

21   be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*

22   at 1050 (citing *Farmer*, 511 U.S. at 837).  The court therefore held the officers were entitled to

23   qualified immunity as "it would not be clear to a reasonable prison official when the risk of harm

24   from double-celling psychiatric inmates with one another changes from being *a* risk of *some* harm

25   to a *substantial* risk of *serious* harm."  *Id.* at 1051.  Accordingly, Defendants argue "[e]ven if the

26   allegations . . . were true, it would not have been clear to every reasonable officer that they were

27   violating an inmate's constitutional rights by not following HDSP's housing protocol, because

28   they were not aware of a substantial risk of serious harm."  (ECF No. 11-1 at 9.)

In opposition, Plaintiffs argue *Estate of Ford* establishes "that reasonable prison officials cannot ignore risks of which they are made aware" — if an officer knew an inmate was acting out dangerously with cellmates or that he was a threat to another inmate but housed the inmate with him anyway, this would violate the Eighth Amendment. (ECF No. 12 at 11 (citing *Estate of Ford*, 301 F.3d at 1050).) Plaintiffs allege Defendants knew Stockton killed an inmate before and was a threat to Decedent, but housed them together anyway. (*See generally* ECF No. 9.) This Court finds based on the rationale of *Estate of Ford*, it would be clear to a reasonable officer that knowingly subjecting an inmate to substantial harm by housing them with their enemy would be constitutionally unlawful. Therefore, the Court is inclined to agree with Plaintiffs.

*Estate of Ford* further provides "a prison official would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." 301 F.3d at 1052 (citing *Farmer*, 511 U.S. at 843 n.8). The Supreme Court has also held "prison officials may be held liable under the Eighth Amendment for 'deliberate indifference' to inmate health or safety only if [they] know that inmates face a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate [or prevent] it." *Farmer*, 511 U.S. at 825.

Plaintiffs correctly note there are some facts that distinguish *Estate of Ford* from the instant case. (*See* ECF No. 12 at 11.) Notably, Ford and Diesso had been successfully housed together before and even requested to be housed together. *Estate of Ford*, 301 F.3d at 1047. There were few indicators Diesso posed a threat because he was on medication, and there were no indicators of gang-affiliation that would have prevented Ford and Diesso from being housed together. *Id.* The issue of qualified immunity in *Estate of Ford* turned on whether it was clear to a reasonable officer that his conduct was unlawful. *Id.* The court found that "even if [the defendant officer] had checked the files that he was supposed to check, he would not have uncovered evidence that would have made him aware of a substantial risk of serious harm." *Id.* at 1047. The court also found there was no clear information available to the officers that would have prevented the inmates from being housed together, and therefore the officers' conduct was reasonable. *Id.* at 1052.

8

Here, Plaintiffs allege Defendants knew the violent propensity and gang-affiliation of Stockton. (ECF No. 9 ¶ 14.) Plaintiffs allege Defendants knew Decedent was an enemy of the AB and therefore at a substantial risk of harm. (*Id.* at ¶ 19.) Plaintiffs allege Defendants had recorded Stockton and Decedent's statuses in SOMS which would have also noted the substantial risk of harm and advised against housing Decedent and Stockton together. (*Id.* at ¶ 16.) Plaintiffs also allege it is protocol for Defendants to check SOMS before placing inmates in a cell together. (*Id.*)

Taking the Plaintiffs' allegations as true at the pleading stage, a reasonable officer could infer that failure to check SOMS prior to housing Stockton and Decedent together would subject Decedent to a substantial risk of harm. *See Cruz*, 405 U.S. at 322. Because Eighth Amendment protection from deliberate indifference to inmate health and safety is an established constitutional right, *see Farmer*, 511 U.S. at 828, Defendants are not entitled to qualified immunity. Accordingly, Defendants' Motion to Dismiss is DENIED based on a qualified immunity defense.

        C.      Sufficiency of Claims

                *i.*      *Claims One and Three: Violation of Eighth and Fourteenth Amendment Constitutional Rights*

A Fourteenth Amendment substantive due process claim for interference with the parent-child relationship requires that the parent and child share an "enduring" relationship. *See Lehr v. Robertson*, 463 U.S. 248, 260 (1983) (citing *Caban v. Mohammed*, 441 U.S. 380, 397 (1977)). Further, the alleged violations of a decedent's constitutional rights provide the basis for the substantive due process claim. *Cooper v. Brown*, No. 1:15-cv-00648-LJO-SAB, 2019 WL 4138682, at *6 (E.D. Cal. Aug. 30, 2019) (citations omitted). Here, Defendants do not dispute Plaintiffs' relationship with Decedent is protected under the Fourteenth Amendment but seek dismissal of Plaintiffs' claim on the basis that Plaintiffs fail to allege the underlying Eighth Amendment violation. (ECF No. 11-1 at 4.)

Under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citations and internal quotations omitted). The failure to protect an inmate may rise to the level of an Eighth

Amendment violation when: (1) the deprivation alleged is objectively, sufficiently serious; and (2) the prison official is deliberately indifferent to the inmate's health or safety. *Id.* at 834. "Deliberate indifference describes a state of mind more blameworthy than negligence" but is fulfilled by something "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

This subjective inquiry into deliberate indifference involves two components. First, Plaintiffs must "demonstrate that the risk was obvious or provide other circumstantial or direct evidence that the prison officials were aware of the substantial risk" to Decedent's safety. *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1078 (9th Cir. 2013) (citing *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)). A prison official must "be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 837. Thus, an official's "failure to significantly alleviate a significant risk that he should have perceived but did not" does not constitute deliberate indifference. *Id.* at 838; *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002) (finding that even "[i]f a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk."); *see also LaMarca v. Turner*, 995 F.2d 1526, 1535–36 (11th Cir. 1993) (deliberate indifference requires a prison official possess both knowledge of the danger and the means to cure it).

Second, Plaintiffs must show there was no reasonable justification for exposing Decedent to the risk. *Lemire*, 726 F.3d at 1078; *Thomas*, 611 F.3d at 1150. Thus, a prison official acts with deliberate indifference when he "consciously disregard[s] a substantial risk of serious harm" to a prisoner's health or safety. *See Farmer*, 511 U.S. at 839–40 (applying the Model Penal Code's criminal recklessness standard to Eighth Amendment deliberate indifference) (internal quotations omitted). "[D]irect causation by affirmative action is not necessary: 'a prison official may be held liable under the Eighth Amendment if he knows that inmates face a substantial risk of serious harm and disregards that risk *by failing to take reasonable measures to abate it*.'" *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016) (en banc) (emphasis in original)

(quoting *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009); *Farmer*, 511 U.S. at 847). Nevertheless, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *see also LaMarca*, 995 F.2d at 1536 (failure in attempting to remedy a danger does not amount to deliberate indifference unless the prison official knows of and disregards an appropriate and sufficient alternative).

Here, Plaintiffs allege Defendants "knew there was a substantial risk of violence when AB enemies are placed with AB members/associates" and "[b]y placing [Decedent] into a cell with Stockton, [D]efendants disregarded that obvious risk." (ECF No. 9 ¶ 32.) In moving to dismiss this claim, Defendants do not dispute Stockton posed a substantial risk of harm to Decedent or whether there was an "objectively, 'sufficiently serious'" deprivation. (*See* ECF No. 11-1); *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Instead, Defendants argue "Plaintiffs do not plead facts showing that . . . Ca[r]rillo, Cea, and Valverde knew of, and disregarded, a substantial risk of serious harm to Decedent." (ECF No. 11-1 at 5.) Specifically, Defendants note Plaintiffs' allegations that Defendants "failed to ensure that the cell compaction was properly evaluated or processed by HDSP central control through SOMS" fails to show Defendants' knowledge of a substantial risk of serious harm to Decedent and subsequent disregard of it.[1] *Id.* In opposition, Plaintiffs assert they "made several factually specific allegations that each [D]efendant knew, and in turn, both acted (and failed to act) in several different ways, despite their underlying knowledge of the particularized and serious risk that

---

[1] Defendants also argue a viable § 1983 claim must "demonstrate the *specific* acts each *individual* did and how that *individual's* alleged misconduct *specifically* violated plaintiff's constitutional rights." (ECF No. 11-1 at 5.) Plaintiffs note in their opposition that such "group pleading" is permissible and "each of the three [D]efendants played very similar or the same roles in effectuating the cell compaction and acting or failing to act with deliberate indifference to [Decedent]." (ECF No. 12 at 8–9.) There is controlling case law that permits a court to only require enough facts to state a plausible claim. *Ashcroft*, 556 U.S. at 697. Even if the Court were to accept Defendants' argument that Plaintiffs' facts are not specific enough, the Supreme Court made it clear that "no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (citing *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)).

1  Stockton posed toward [Decedent]." (ECF No. 12 at 7.) The Court will therefore address the two
2  components of the deliberate indifference element.

### a) Subjective Knowledge/Inference of the Risk

As to the first component, Plaintiffs allege "Stockton's violent propensities and status as an AB member/associate was known to [D]efendants, and each of them, well prior to the cell-compaction in which [Decedent] was placed with Stockton." (ECF No. 9 ¶ 14.) Plaintiffs allege each Defendant subjectively knew of Stockton's history. Plaintiffs also allege "Defendants, and each of them, knew that placing inmates together or otherwise making cell changes without processing the change through SOMS poses a serious and obvious risk of harm to inmates, including [Decedent]. Given the various gang affiliations of inmates throughout California prisons and sensitive needs of other inmates, there is a substantial and real risk of harm whenever inmates are rehoused/placed together without a determination that they are compatible." (*Id.* at ¶ 18.) Plaintiffs finally allege "Defendants, and each of them, through their *personal knowledge, positions at CDCR and/or access to information (e.g., via SOMS)* about HDSP inmates (including Stockton and [Decedent]) had knowledge that Stockton posed a direct threat to other inmates given his propensity for violence/prior attacks and association with the AB." (ECF No. 9 ¶ 19) (emphasis added). In sum, Plaintiffs allege sufficient facts to establish Defendants had subjective knowledge of the risk to Decedent by not processing the cell change through SOMS. As such, the Court will next evaluate whether the SAC establishes these Defendants consciously disregarded the risk to Decedent.

### b) Conscious Disregard of the Risk

As to the second component, Plaintiffs allege "Defendants, and each of them, failed to take adequate measures to extinguish the threat posed by Stockton, failed to adopt or implement adequate policies or procedures to segregate violent persons such as Stockton from other inmates after learning of their violent propensities, failed to adopt or implement adequate policies or procedures to segregate AB members/associates such as Stockton from other known AB enemy inmates, failed to supervise/search Stockton or cell Z-161 adequately, failed to train correctional employees adequately, failed to adopt or implement policies to ensure correctional employees had

sufficient information about inmates when undertaking the cell-compaction process, failed to warn [Decedent] of Stockton's AB ties/violent propensities, and otherwise failed to ensure that SOMS was utilized prior to any contemplated cell changes." (*Id.* at ¶ 20.) Plaintiffs further allege "the planned attacks and violence perpetrated by the AB against its enemies (such as [Decedent]) is longstanding, pervasive, and well-documented such that [D]efendants, and each of them, knew that placing [Decedent] would pose a substantial risk to his health and safety." (*Id.* at ¶ 21.) Based on the foregoing, Plaintiffs allege sufficient facts to establish Defendants consciously disregarded the risk to Decedent.

Thus, Plaintiffs have sufficiently alleged a claim for deliberate indifference. Accordingly, Defendants' Motion to Dismiss Plaintiffs' Eighth and Fourteenth Amendment claims is DENIED.

### ii. *Claim Two: Negligence*

As an initial matter, Defendants move to dismiss Claim Two with respect to DeLong Sr., arguing that his claim is barred by the Government Claims Act because he has not filed a government claim. (ECF No. 11-1 at 9–10.) Plaintiffs explicitly agree DeLong Sr. did not file the requisite government claim and is barred from pursuing this state law claim. (ECF No. 12 at 2.) As such, this Court finds that Defendants' Motion to Dismiss DeLong Sr.'s negligence claim is GRANTED without leave to amend. *See Lopez*, 203 F.3d at 1130.

Defendants move to dismiss A. DeLong's negligence claim, arguing the Court should decline to exercise supplemental jurisdiction over this claim once all of Plaintiffs' federal claims are dismissed. (ECF No. 11-1 at 10.) In opposition, Plaintiffs maintain they have adequately stated her negligence claim. (ECF No. 12 at 2.)

The supplemental jurisdiction statute, 28 U.S.C. § 1367, grants federal courts supplemental jurisdiction over claims where no original jurisdiction exists. *See generally* 28 U.S.C. § 1367. Section 1367(a) also provides that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.*; *see also Sparrow v. Mazda Am. Credit*, 385 F. Supp. 2d 1063, 1070 (E.D. Cal. 2005) (holding that where "counterclaims bear a logical and factual relationship to

Plaintiff's claims in that they are related to a single debt incurred by Plaintiff, supplemental jurisdiction exists over Defendant's counterclaims under § 1367(a)").

Here, A. DeLong filed the requisite governmental tort claim with California and was ultimately rejected due to issue complexity beyond the scope of what they process. (ECF No. 9 at 11; *see also* ECF No. 11-2 at 5–13.) Because the underlying facts of the state claim are directly related to the Eighth and Fourteenth Amendment claims, the Court finds it has supplemental jurisdiction over this claim. Accordingly, Defendants' Motion to Dismiss A. DeLong's state law claim is DENIED.

### IV.     CONCLUSION

For the aforementioned reasons, the Court hereby GRANTS in part and DENIES in part Defendants' Motion to Dismiss (ECF No. 11) as follows:

1. Defendants' Motion to Dismiss Claims One and Three is DENIED;
2. Defendants' Motion to Dismiss Claim Two as to DeLong Sr. is GRANTED without leave to amend; and
3. Defendants' Motion to Dismiss Claim Two as to A. DeLong is DENIED.

Defendants shall file an answer to the Second Amended Complaint not later than thirty (30) days after the electronic filing date of this Order.

IT IS SO ORDERED.

September 9, 2021

   Troy L. Nunley
   United States District Judge